James VINYARD, Plaintiff-Appellant,

v.

**MISSOURI PACIFIC RAILROAD,**
**Defendant-Respondent.**

No. 42424.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 19, 1982.

Application to Transfer Denied
May 17, 1982.

---

James F. Koester and Kenneth D. Koester, St. Louis, for plaintiff-appellant.

Charles P. Lippert, St. Louis, for defendant-respondent.

SATZ, Presiding Judge.

In this case, plaintiff was injured when a trailer he was unloading from a railroad car slipped out of position and fell on his hands. Plaintiff sought compensation for his injuries from the defendant, Missouri Pacific Railroad Company (Railroad), under the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U.S.C. §§ 51–60. Under the FELA, the Railroad would be liable for negligently causing an injury to plaintiff if he were employed by the Railroad at the time of his injury. Plaintiff acknowledged he was employed by Missouri Pacific Trucking Company (Truckline), a wholly owned subsidiary of the Railroad, but he contended he was also employed by the Railroad, within the meaning of the FELA, at the time of his injury. At trial, the Railroad moved for a directed verdict at the close of plaintiff's evidence. The motion was denied. The Railroad elected to stand on its motion, and the case was submitted to the jury. The jury found in plaintiff's favor and awarded plaintiff $175,100.00. Defendant then moved for a judgment in accordance with his motion for a directed verdict. The trial court sustained this motion, vacated the jury's verdict and ordered judgment entered in favor of defendant. Plaintiff appealed.

The sole issue on appeal is whether plaintiff was an employee of the Railroad within the meaning of the FELA at the time of his injury; or, more specifically, whether there was sufficient evidence to submit this issue to the jury. We find there was sufficient evidence to submit this issue to the jury. We reverse and remand with direction to reinstate the judgment in favor of plaintiff.

In our review of this directed verdict, we consider only the evidence and inferences favorable to the plaintiff, the party against whom the verdict was directed. *Bennett v. North Brighton Townhouses, Inc.*, 588 S.W.2d 100, 103 (Mo.App.1979). We disregard all evidence and inferences to the contrary. *Id.* at 103. Only if reasonable men could not reach differing conclusions on the employment issue may that issue be taken from the jury. *Baker v. Texas & Pacific R. Co.*, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959).

Plaintiff's evidence that he was an employee of the Railroad at the time of his injury is based primarily on his own testimony. He testified that a Mr. Bowman, a supervisor or official of the Railroad, directed, supervised and controlled the manner in which plaintiff carried out the details of his work and that Mr. Bowman also had the authority to fire him. In addition, a Railroad employee, a car man, inspected the railroad cars which plaintiff was required to load and unload. If the car man felt the car was improperly loaded, he would have plaintiff and the other workers unload the car and either reload it or place the load on a different car. While plaintiff was working with cars loaded with pipe, a car man had stopped plaintiff's "work" "three or four times" and ordered plaintiff to reload the pipe. In these instances, the car man detailed "exactly how they want[ed] the loads tied down." Also, in support of his claim, plaintiff established that the Railroad supplied the car which he was unloading at the time of his injury and that the Truckline was a wholly owned subsidiary of the Railroad.

The FELA uses the terms "employed" and "employee" in their natural sense. These terms are intended to describe the conventional relation of employer and employee. *Robinson v. Baltimore & Ohio R. Co.*, 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849 (1915). For purposes of the FELA, the question of employment, or master-servant status, is determined by common-law principles. *Baker v. Texas Pacific R. Co.*, supra, 359 U.S. at 228, 79 S.Ct. at 665. The Restatement of Agency, embodying common-law principles, provides a guideline to analyze the employment issue. *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498 (1974). The Restatement defines a servant as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control

or right to control." *Restatement (Second) of Agency*, § 220(1). In § 220(2), the Restatement recites various factors which help in applying that definition. No single factor is determinative, but the primary factor is who had the right to control and direct the worker in the detailed performance of his work at the time of the injury. *Cimorelli v. New York Central R. Co.*, 148 F.2d 575, 577 (6 Cir. 1945); *Ciaccio v. New Orleans Public Belt R. Comm'n*, 290 F.Supp. 197, 200 (E.D.La.1968); *DeMaree v. Pennsylvania R. Co.*, 147 F.Supp. 656, 659 (D.Del. 1956). In analyzing this right to control, care must be used to distinguish between "authoritative direction and control, and mere suggestions as to details or the necessary cooperation" to complete the work. *Standard Oil Co. v. Anderson*, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909). The focus here is not on who controls the result of the work but who controls the detailed performance of the work, *Turpin v. Chicago, Burlington & Quincy R. Co.*, 403 S.W.2d 233, 238 (Mo. banc 1966), and it is the right or power of control that is important, not necessarily the exercise of that right or power. *Byrne v. Pennsylvania R. Co.*, 262 F.2d 906, 913 (3rd Cir. 1959);[1] *DeMaree v. Pennsylvania R. Co.*, supra at 659.

Plaintiff acknowledges he was at least nominally in the employ of the Truckline at the time of his injury. He argues, however, that he was a dual servant, acting for both the Truckline and the Railroad, *see Kelley*

*v. Southern Pacific Co.*, supra, 419 U.S. at 324, 95 S.Ct. at 476, and he contends there was sufficient evidence to make this a jury question. We agree.

■ As noted, plaintiff testified that Mr. Bowman, the terminal manager of the terminal at which plaintiff worked, directed, supervised and controlled the details of plaintiff's work. This part of plaintiff's testimony is direct and to the point:

"Q. Now, in your job, are there any officials or supervisors of the Missouri Pacific Railroad, I am not talking about the truck line, any there where you work?

A. Mr. Bowman.

Q. Mr. Bowman is the terminal manager of the terminal you work in?

A. Yes.

Q. Does he direct and supervise or control your activities?

A. Yes.

Q. And does he direct, supervise, and control how you do the detail work?

A. Yes.

Q. Does he have the authority to fire you?

A. Yes.

Q. Is he the boss?

A. He's the boss."

The Railroad did not object to this testimony. Given its plain meaning, with favorable inferences, the testimony clearly shows that Mr. Bowman had the authority to give plaintiff detailed directions in the perform-

---

1. Other relevant factors to be considered are who engaged the plaintiff to perform the work; who furnished the tools to perform the work; who paid the plaintiff and who had the power to fire the plaintiff. *See Ward v. Atlantic Coast Line R. Co.*, 362 U.S. 396, 399, fn. 1, 80 S.Ct. 789, 791, 4 L.Ed.2d 820 (1960). The critical importance of the right to control the plaintiff in the performance of his work is reflected in an instruction approved by the Supreme Court in the *Ward* case. This instruction reads:

"One of the issues to be decided in this case is whether or not the plaintiff ... was employed by the defendant railroad at the time he was injured. This issue must be determined from all of the circumstances of the case. *The primary factor to be considered is whether or not the railroad had the power to direct, control, and supervise the*

*plaintiff in the performance of his work at the time he was injured.* Other relevant factors to be considered are: who selected and engaged the plaintiff to perform the work; who furnished the tools with which the work was performed; who paid the plaintiff his wages for the performance of the work; the amount of scale of such wages; and who had the power to fire or dismiss the plaintiff from the work.

*If you find that the railroad, through its foreman ..., had the power to direct, control and supervise the plaintiff in the performance of the work he was doing at the time he was injured, then you should find that the plaintiff was employed by the defendant railroad at the time he was injured. ..."* (Emphasis Added). *Id.* at 399, fn. 1, 80 S.Ct. at 791.

ance of his work on a day-to-day basis. In subsequent direct testimony, when referring to Mr. Bowman, plaintiff again testified that Bowman worked for the Railroad. This time, the testimony was objected to. The trial judge then asked plaintiff whether he knew who Bowman worked for and plaintiff replied: "I can't swear to it, I'm just telling." The court ordered this testimony stricken.[2]

Plaintiff argues that only the latter testimony was stricken and urges his former testimony as support for his claim of being the Railroad's employee. The Railroad neither responds to nor comments on this assertion. We agree with plaintiff. His former testimony was not stricken. It remains unobjected to and, thus, carries its inherent and undiminished probative value.

We are aware that the submissibility of the employment issue depends upon proof of facts. We are equally aware that "[n]either mere conclusions nor expressions of 'feeling' satisfy that standard, and even the positive assertion of a witness can be so diluted and qualified by other testimony of the same witness as to render such assertion of no probative value." *Thienes v. Harlin Fruit Company*, 499 S.W.2d 223, 227 (Mo.App.1973). However, we do not find plaintiff's unobjected testimony to be mere conclusions. To be sure, plaintiff was not explicit nor specific about the actual details of Mr. Bowman's supervision. Nonetheless, plaintiff did state unequivocally that Bowman did direct, supervise and control the details of his work. The sensible, favorable inference from this is that Bowman directed, controlled and supervised plaintiff on a day-to-day basis. Since this supervision, direction and control concerned the details of plaintiff's work, it was more than the mere suggestions, accommodations or cooperation which may have been neces-

sary to help plaintiff get his job done. Furthermore, without any complaint or comment from the Railroad, we are not prepared to find that plaintiff's subsequent statement that he could not "swear" who Mr. Bowman worked for completely vitiated his prior unobjected to testimony, and, thus, we cannot conclude his former testimony was without probative value. *See Caswell v. St. Louis Public Service Co.*, 262 S.W.2d 40, 45 (Mo.1953); *Atkinson v. Be-Mac Transport, Inc.*, 595 S.W.2d 26, 30 (Mo.App.1980).

The Railroad does argue that plaintiff's burden of making a submissible case on the employment issue required more proof than the "scintilla" of evidence commonly referred to in FELA cases. The Railroad cites *Turpin v. Chicago, Burlington & Quincy Ry. Co., supra*, in support of this argument. The Railroad cites *Turpin* correctly. In that case, our Supreme Court stated, L.C. 237:

"Counsel say that under the FELA decisions, any evidence 'even the slightest,' will make a jury issue. They cite (citations omitted). Those cases all involved issues of negligence or proximate cause under the FELA, and it was to the proof on those questions that the remarks relied upon by plaintiff were directed. On the other hand, it seems clear that the burden of proving *employment* by the defendant in FELA cases is on the plaintiff, that this question is to be determined under general law (general federal law, if there be any difference), and the terms 'employer' and 'employee' are used in the act in their usual and natural sense. *Ward v. Atlantic Coast Line Railroad Co.*, (CA 5), 265 F.2d 75; *Baker v. Texas & Pacific Railroad*, 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756; *Jones v. New York Central Railroad* (CA 6), 182 F.2d 326;

---

2. This portion of plaintiff's direct testimony reads:

"Q. Who's Mr. Bowman?
A. The terminal manager, or was, he's not now.
Q. Who did Mr. Bowman work for at the time you were hurt?
A. The railroad.
Q. The Missouri Pacific Railroad?
A. Yes.
MR. LIPPERT: I object who this Mr. Bowman works for.
THE COURT: Do you know?
A. I can't swear to it, I'm just telling.
THE COURT: It may be stricken from the record."

Robinson v. Baltimore & Ohio Railroad Co., 237 U.S. 84, 35 S.Ct. 491, 59 L.Ed. 849; Gloster v. Pennsylvania Railroad, (WD Pa.) 214 F.Supp. 207; Cimorelli v. New York Central (CA 6), 148 F.2d 575." (Emphasis Theirs).

We have read the cases cited in Turpin and do not see plaintiff's burden on the employment issue as clearly defined as our Supreme Court did. For our purpose here, however, we assume plaintiff had the burden of showing his employment by the railroad by a preponderance of the evidence rather than a scintilla of the evidence. Plaintiff met that burden with the quoted testimony.[3]

The Railroad also perceives a factual similarity between the Turpin case and the present case, and, because the Court, in Turpin, found the plaintiff was not an employee of the railroad, the Railroad argues we should do the same here. The Railroad, however, fails to note the essential and significant difference between the Turpin case and the present case. In Turpin there was no showing, as there was here, that the Railroad supervised, directed and controlled the plaintiff in the details of his work.

We reverse and remand this cause with direction to the trial court to reinstate the judgment of $175,100.00 in favor of plaintiff.

SMITH and SIMON, JJ., concur.

---

3. We do not consider whether the remainder of plaintiff's evidence is relevant and has probative value.