James Odell SMITH, Appellee,

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Appellant.**

No. 12477.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 2, 1968.

Decided March 4, 1969.

Certiorari Denied June 23, 1969.
See 89 S.Ct. 2134.

Hamilton C. Horton, Jr., Winston-Salem, N. C. (Craige, Brawley, Horton & Graham, Winston-Salem, N. C., on brief) for appellant.

Clyde C. Randolph, Jr., and Doris Greene Randolph, Winston-Salem, N. C. (Randolph & Drum, Winston-Salem, N. C., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

James Odell Smith was employed by Baker Drive-Away Company, Inc., which unloaded Chrysler cars for Norfolk and Western Railway Company at a place in North Carolina. While moving around on the top tier of an automobile-carrying railroad car, in the process of releasing the restraining chains on the Chryslers, Smith fell from the railroad car to the ground and was injured. In his damage suit against the railroad brought under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq.) the district court entered summary judgment for Smith on the question of the applicability of the Act, drawing from the undisputed facts and his own inferences the conclusion that Smith was an "employee" of the railroad within the meaning of the Act. After final judgment entered upon a jury verdict for Smith, the railroad appealed the entry of summary judgment for Smith and the denial of its own motion for summary judgment. We affirm.

█ Though the Act in terms applies to "[a]ny employee of a carrier," it is settled that its protection extends in some circumstances to those injured workers not directly employed by the railroad itself. Though employees of independent contractors are not accorded coverage under the Act, e. g., Chicago, R. I. & P. R. R. Co. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735 (1916); Turpin v. Chicago, B. & O. R. R. Co., 403 S.W.2d 233 (Mo.1966), if the injured worker is employed by an agent or adjunct of the railroad he will be treated as an employee of the railroad for purposes of the Act. Pennsylvania R. R. Co. v. Barlion, 172 F.2d 710 (6th Cir. 1949); Pennsylvania R. R. v. Roth, 163 F.2d 161 (6th Cir.), cert. denied, 332 U. S. 830, 68 S.Ct. 208, 92 L.Ed. 404 (1947); Cimorelli v. New York Central R. R. Co., 148 F.2d 575 (6th Cir.1945). Thus traditional concepts of agency extend the coverage of the Act.

█ In Sinkler v. Missouri Pacific R. R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L. Ed.2d 799 (1958), the Supreme Court allowed recovery to a railroad employee injured through the fault of the switching crew of an independent contractor. The concept of "operational activity" was invoked to extend coverage beyond the scope of ordinary agency, and was found to be sufficient alone to produce a finding of an agency relationship within the meaning of that phrase of the Act providing recovery for injuries to *railroad employees* resulting from the fault of "any of the officers, agents or employees" of the carrier. The doctrine of "operational activity" may be termed constructive agency, *i. e.*, an agency that is nonexistent absent the doctrine. It is said to arise out of a nondelegable duty of care to the employee, 356 U.S. at 329, 78 S.Ct. 758. In our case the plaintiff was *not* an employee of the railroad but, instead, was employed by the company held to be performing railroad functions.

We need not decide whether the *Sinkler* doctrine of "operational activity" properly extends to protect one who is not directly employed by the railroad. *See* Hetman v. Fruit Growers Express Co., 346 F.2d 947 (3rd Cir.1965). It is enough here that under traditional agency tests the decision of the district court that the undisputed facts establish agency does not appear erroneous. In support of that conclusion we need supple-

ment the opinion of the district court only briefly.

One of the standard tests of agency is "whether or not the work is part of the regular business of the employer." Restatement (Second) of Agency § 220(h) (1957). "Regular business" and "operational activity" are labels that obviously may be pinned on the same facts. They are not even sharply distinct in theory—for the first is one of the many tests of agency while the latter is alone sufficient basis for finding the agency relationship. Operational activity aside, we think the nature of the work being done by Baker for the railroad here militates toward a finding of agency on standard agency principles. As Baker was unloading automobiles which the railroad had undertaken a contractual duty to unload, to that extent Baker was engaged in the regular business of the railroad.

Though historically and traditionally the railroad is responsible neither for loading nor for unloading, see Casella v. Norfolk & Western Ry. Co., 381 F.2d 473 (4th Cir.1967), an exception exists for the care of cargo in transit or for assembly and redistribution of cargo in a railroad-operated depot. The necessary care of cattle on long hauls was an early illustration of this exception. But yesterday's cattle may be today's Chryslers. These units to be unloaded had a retail value measuring thousands of dollars each. Additionally, the capacity of a specially designed railroad car and the assortment of styles and models ordered by a given dealer make it impractical for dealers to accept carload lots on their own siding as with many other commodities. As the railroad here contracted with the shippers specifically to assume the duty of unloading these valuable commodities and to be paid for their services through the unloading stage, the freight yard at which Baker unloaded these units may be regarded not unreasonably as merely a redistribution point in the shipping of these cars. The contract with Baker engaged Baker to perform the unloading,

which duty had been specifically assumed by the railroad as part of its regular business. Thus the situation here meets a further test of agency in addition to those emphasized by the district court. *Accord,* Pennsylvania R. R. Co. v. Barlion, *supra;* Pennsylvania R. R. Co. v. Roth, *supra;* Cimorelli v. New York Central R. R. Co., *supra;* Downs v. Baltimore & O. R. R. Co., 345 Ill.App. 118, 102 N.E.2d 537, 30 A.L.R.2d 503 (1952). *But cf.* Tarboro v. Reading Co., 396 F.2d 941 (3rd Cir.), cert. denied, 393 U.S. 1027, 89 S.Ct. 637, 21 L.Ed.2d 569; Hetman v. Fruit Growers Express Co., 346 F.2d 947 (3rd Cir.1965); Del Vecchio v. Pennsylvania R. R. Co., 233 F.2d 2 (3rd Cir.), cert. denied, 352 U.S. 909, 77 S.Ct. 146, 1 L.Ed.2d 117 (1956); Dougall v. Spokane, P. & S. Ry. Co., 207 F.2d 843 (9th Cir.1953), cert. denied, 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063 (1954).

Affirmed.