**Richard BRADSHER and June Bradsher, Appellants,**

v.

**MISSOURI PACIFIC RAILROAD, Missouri Pacific Truck Lines, Inc., Appellees,**

**Vertac, Inc. and Vertac Chemical Corporation.**

**No. 81–2121.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1982.

Decided June 17, 1982.

---

Laser, Sharp & Huckabay, P. A., Little Rock, Ark., for appellees, Missouri Pacific Truck Lines, Inc.

McMath & Leatherman, P. A., Little Rock, Ark., for appellants.

Herschel H. Friday, Phillip Malcom and Laura Hensley, Little Rock, Ark., for appellee Missouri Pacific R. R.

Before ARNOLD, Circuit Judge, STEPHENSON, Senior Circuit Judge, and HANSON,[*] Senior District Judge.

STEPHENSON, Senior Circuit Judge.

Appellants Richard Bradsher and his wife, June Bradsher, appeal the district court's[1] grant of summary judgment in favor of appellees Missouri Pacific Railroad and Missouri Pacific Truck Lines, Inc. for failure to prove that Richard Bradsher was an employee of the railroad for purposes of coverage under the Federal Employers' Liability Act. Bradshers appeal claiming summary judgment was inappropriate because there was a genuine issue of material fact concerning the amount of control the railroad exercised over Richard Bradsher's employment. We reverse and remand.

## FACTS

Appellant Richard Bradsher[2] worked for Missouri Pacific Truck Lines, Inc. (M. P. Truck) for approximately ten years in its Bethany Road terminal in North Little Rock, Arkansas. M. P. Truck is engaged in the operation of "piggy-backs." Through this procedure highway semi-truck trailers are carried on railroad flatcars between terminals. The practice enables railroads to serve customers who are not located on railroad sidings or who otherwise prefer to use highway trailers instead of railroad cars.[3] Bradsher's duties involved the loading and unloading of highway semi-truck

---

[*] The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2. Any reference hereafter to Bradsher in the singular refers to Richard Bradsher.

3. The flexibility of piggy-back service is evidenced by the various "plans" offered. For example, a customer may choose door to door service whereby the trailers are drayed from the customer to the railroad, carried to the destination and drayed to the consignee's location. At the other extreme, a shipper may choose to deliver the trailers to the railroad terminal and pick them up at the destination terminal. All the railroad or its trucking contractor must do in such a case is load the trailer onto a flatcar, move the car to its destination and off-load the trailer from the flatcar.

trailers from railroad cars, the maintenance of these trailers, and the upkeep of other equipment, including railroad-owned equipment.

Missouri Pacific Railroad (MoPac) owns M. P. Truck and operates it as an integral part of its transportation system. In sum, M. P. Truck loads and off-loads trailers for MoPac and maintains the trailers that pass through its terminals. Also, even though M. P. Truck has a fleet of trailers, MoPac has one as well, as do other railroads and leasing companies. M. P. Truck loads, off-loads, and maintains these trailers as they pass through the terminals, regardless of ownership.

The piggy-back terminal at Bethany Road adjoins the MoPac yards and shops. MoPac switches loaded and empty flatcars into and out of the facility and handles the flatcars in its trains.

The basis of the Bradshers' claim is that during Bradsher's ten years of employment, he cleaned empty trailers that had been loaded with chemicals 24D and 245T. He argues that this contact caused him to contract cancer. As a result of this condition, Bradsher brought this suit for damages against MoPac and M. P. Truck.[4] Bradsher is already receiving workmen's compensation on the basis of his employment by M. P. Truck.

Appellants argue that MoPac is liable under the Federal Employers' Liability Act (FELA) even though he is formally an employee of M. P. Truck. Appellants contend that the FELA extends coverage to Bradsher because he was a joint employee of the two companies. They argue that he is, therefore, covered by FELA according to the test enunciated by the Supreme Court in *Kelley v. Southern Pacific*, 419 U.S. 318, 324, 95 S.Ct. 472, 476, 42 L.Ed.2d 498 (1974).

Bradshers contend that M. P. Truck is liable under FELA because it is a subservient of MoPac. *See Id.*

On defendant MoPac and M. P. Truck's motion, the district court entered summary judgment against appellants on the FELA counts for failure to show the control over Bradsher necessary to find MoPac liable.[5] Appellants appeal.

ISSUE

The issue raised on appeal is whether the district court erred in concluding there was no genuine issue of any material fact as to MoPac and M. P. Truck's lack of liability under FELA and MoPac and M. P. Truck were, therefore, entitled to summary judgment.

DISCUSSION

*MoPac Summary Judgment*

■ In considering the motion for summary judgment, the district court considered plaintiffs' complaint and amended complaint; the depositions of Richard Bradsher,[6] Frank Vardaman and Tommy Bartlett; the affidavits of K. D. Hestes and Danny Partridge; and the interrogatories submitted by Missouri Pacific Railroad.

Bradshers contend that even though Bradsher was formally an employee of M. P. Truck, he was also an employee of MoPac. They base this argument on Bradsher's statements that, among other duties, he repaired equipment at the request of railroad employees and maintained railroad-

---

**4.** In the alternative, appellants Bradshers sued MoPac as a third-party tortfeasor for negligence in failing to provide Bradsher "with adequate warnings and/or risk inherent in the use and exposure to the chemical in question." Appellants also sued Vertac, Inc. and Vertac Chemical Corp., the alleged suppliers of the toxic chemicals, as third-party defendants.

Appellants took a voluntary nonsuit, pending this appeal, against MoPac, as to the third-party tortfeasor count, and against Vertac, Inc. and Vertac Chemical Corp.

**5.** The district court held:

**3.** Inasmuch as Bradsher was not an employee of Missouri Pacific Railroad and his employer, Missouri Pacific Truck Lines, was not an alter ego of Missouri Pacific Railroad Company, within the meaning of the Federal Employers' Liability Act, plaintiffs have no cause of action under the Act and Missouri Pacific is entitled to summary judgment to the extent that plaintiffs' action is premised on the Federal Employers' Liability Act.

**6.** Our court and, apparently, the district court were supplied only with excerpts from Bradsher's deposition.

owned equipment. For example, appellants claim that Bradsher worked on the refrigeration equipment on trailers and trains in the adjoining MoPac railroad yard. He claims that he did this so the railroad would not incur delays in train operation through switching out flatcars loaded with malfunctioning trailers and spotting them at the piggy-back ramp for repair.

Bradsher stated that he was directed to work on loaded refrigerator trailers in trains and the railroad yard by Ron Weisman, a MoPac train dispatcher. MoPac attempted to dispute this through the deposition of Tommy Bartlett, a fellow worker of Bradsher's. He claimed that he was never asked to work on flatcars, nor was he ever asked to perform any job by a railroad dispatcher.

Bradsher also stated that he worked on railroad-owned forklifts. Frank Vardaman, Manager of Customer Service Operations for MoPac at Bethany Road, disputes the ownership of these forklifts by stating in his deposition that they were owned by M. P. Truck.

Bradsher also claimed that he worked on railroad highway vehicles, sometimes stranded along highways and sometimes located at the nearby railroad offices. Appellants assert that many of the trailers which Bradsher cleaned or otherwise maintained were owned by MoPac and that he was directed in many of his duties by various railroad employees.

Bradsher said in his deposition that his immediate supervisors were Danny Partridge and Ralph Huffman who he claimed were employees of MoPac. Partridge stated in his deposition, however, that he and Huffman were employees of M. P. Truck.

Bradsher said he also worked for Vardaman, an employee of MoPac. Vardaman, in his deposition, admitted that he asked Bradsher to perform certain maintenance on railroad vehicles, but he claimed he had no authority to force Bradsher to do these things. Bartlett also stated that while Vardaman asked him to do certain jobs, Vardaman did not have the authority to require him to do so.

Bradsher further stated that Carroll Jester, dock foreman at the Bethany Road terminal, also directed Bradsher's activities. Bradsher said that he believed Jester was a MoPac employee.

Among others, Bradsher claimed he also worked under the direction of Cal Eudy, a Mr. Hay and a Mr. Hayden, all of whom he said were railroad employees. MoPac attempted to show through deposition that these individuals were truck line employees.

Bradsher argued that under the direction of the railroad employees he worked on MoPac flatcars, forklifts, ice trucks, and other equipment. He said in his deposition, "whoever called me and told me there was a piece of equipment down, I was to do my best to put the piece of equipment back in operation, and that's what I did exactly for 9½ years." In his deposition, Bradsher testified that one of his duties was to wash trailers transported by MoPac that had contained chemicals and herbicides. He testified that he washed such trailers from February 1970 until September 1979.

Rule 56(c) of the Fed.R.Civ.P. dictates that in order for summary judgment to be granted, there must be "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

We held recently, when discussing the propriety of summary judgment:

> It is an extreme remedy that is not appropriate unless the moving party has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. The court is required to view the facts in the light most favorable to the party opposing the motion.

*Keys v. Lutheran Family & Children's Services*, 668 F.2d 356, 357–58 (8th Cir. 1981). *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).

Furthermore, "the inferences to be drawn from the underlying facts contained in [the moving party's] materials must be viewed in the light most favorable to the party opposing the motion (citation omitted)." *Vacura v. Plott*, 666 F.2d 1200, 1203 (8th Cir. 1981) (quoting *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 158–59, 90 S.Ct. at 1608–1609).

In light of these standards, the district court erred in granting summary judgment in favor of the railroad. The Supreme Court has held that a person falls within FELA if that worker can be classified as a joint employee of the railroad even though it is not his formal employer. Therefore, if Bradsher had established at least a disputed claim of joint employment, the court should not have granted the motion for summary judgment.

According to Bradsher's deposition, he was directed in his duties by various MoPac employees. He worked on railroad equipment. He even performed maintenance on equipment in trains that had temporarily stopped in the railroad yard.

In *Kelley v. Southern Pacific, supra*, 419 U.S. at 324–31, 95 S.Ct. at 476–479, the Supreme Court considered the case of an employee of Pacific Motor Transit (PMT) who was injured while unloading a tri-level auto rack (a railroad car used to carry automobiles). PMT was a wholly-owned subsidiary of Southern Pacific. The district court allowed recovery on the grounds that PMT was Southern Pacific's agent, performing a function that was a contractual duty of the railroad.

The court of appeals and the Supreme Court reversed and remanded. The Supreme Court ordered the reversal and remand on the grounds that the district court's standard was erroneous. The Court held that to satisfy FELA, the railroad must have "control or right to control" the actions of the worker. *Id.* at 325–26, 95 S.Ct. at 476–477.

Our court held in *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), that an employee of a railroad's wholly-owned subsidiary trucking company fell within FELA coverage where it was shown that the railroad exerted "actual control and supervision over the performance of [the employee's] services." *Id.* at 199. In that case, Warren Vanskike had been injured while employed by Frisco Transportation Company. Similar to the arrangement in this case, St. Louis-San Francisco Railroad Company (Frisco Railroad) contracted with Frisco Transportation Company to load semi-trailers onto and off-load them from railroad cars in piggy-back service. Vanskike, assisted by a co-worker, was loading piggy-back trailers on flatcars in Springfield, Missouri, when the fifth wheel hitch on a flatcar fell on Vanskike's arm as he attempted to raise the hitch. Vanskike sued Frisco, the manufacturer of the railroad car, and the owner of the car. The jury awarded Vanskike $904,000. Although the case was remanded by our court on other grounds, we approved the district court's instructions on FELA liability.

■ In the present case, Bradsher has sought to establish that MoPac exercised actual control and supervision over his work. Bradsher sought to establish this matter of control through his deposition.[7] Depositions of Vardaman, Bartlett and Partridge and MoPac's answer refuted some of Bradsher's contentions, but this refutation cannot serve as the basis for summary judgment. Indeed, the disagreement created by the contradictory statements, creates the very "genuine dispute of material fact" recognized in Rule 56(c) which must not exist if summary judgment is to be granted.

*M. P. Truck Summary Judgment*

■ The district court's grant of summary judgment as to the trucking company under FELA was also erroneous. In the

---

7. "The belief of an employee as to who is his employer is a fact to be considered in determining whether a master-servant relationship exists (citation omitted)." *Vanskike v. ACF In-* dustries, Inc., 665 F.2d 188, 199 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982).

**1258**

*Kelley* case, the Supreme Court recognized that if a second company could be shown to be a conventional common-law servant, the "control or right to control" test would be met. *Kelley v. Southern Pacific, supra,* 419 U.S. at 326, 95 S.Ct. at 477.

Appellants argue that they have been precluded from proceeding in discovery to develop their theory of the relationship between MoPac and M. P. Truck. Appellants have raised in their pleadings the issue of a subservient relationship and there has been evidence regarding the railroad's amount of control over his duties adduced through Bradsher's deposition.

We are aware that there has not been a great deal of evidence submitted on the issue of the relationship between MoPac and M. P. Truck. However, in light of the testimony of Bradsher that he worked under the direction and control of railroad employees, that he maintained railroad equipment, and that he worked around and on railroad property including the cleaning of empty trailers that had been loaded with chemicals which is the basis of his present action, we conclude the issue of the subservient relationship has been raised sufficiently to create a genuine issue of material fact. *See Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 158–59, 90 S.Ct. at 1608–1609; *Keys v. Lutheran Family & Children's Services, supra,* 668 F.2d at 357–58; *Vacura v. Plott, supra,* 666 F.2d at 1203; *Vette Co. v. Aetna Casualty & Surety Co., supra,* 612 F.2d at 1077.

CONCLUSION

We conclude the district court erred in granting summary judgment in favor of MoPac and M. P. Truck. We remand the case for further proceedings consistent with this opinion. We express no view as to the ultimate merits of the controversy.

Reversed and remanded.